IN THE CIRCUIT COURT OF COLE COUNTY, MISSOURI

JANICE RILEY,                        )
                                     )
                    *Plaintiff*,     )
                                     ) № **17AC-CC00588**
—— *vs.* ——                          )
                                     ) Division **II**
MISSOURI NATIONAL GUARD, et al.,     )
                                     )
                    *Defendants.*    )

_____
### *FIRST AMENDED* PETITION
_____

**COMES NOW** Plaintiff, by the undersigned counsel, and for her cause of action stateS as follows:

<u>JURISDICTION AND VENUE</u>

1. This Court has jurisdiction over this matter pursuant to Mo. Const. Art. V, §14(a) and Mo. Rev. Stat. §478.070.

2. Pursuant to Mo. Rev. Stat. §508.010.2, venue is proper in this Court because at least one of the defendants resides in or may be found in Cole County.

3. Venue is also proper herein pursuant to §508.010.4 because the tortious acts complained of first occurred within Cole County.

<u>PARTIES</u>

4. At all relevant times, Plaintiff was a natural person who was a citizen and resident of the state of Missouri, and who was a career-status member of the Missouri Air National Guard, Active Guard Reserve ("AGR"), with the rank of Master Sergeant after more than seventeen, but less than eighteen, years of service. At the time of the actions complained of herein, Plaintiff performed duties as a personnel technician.

5. At all relevant times, Defendant Missouri National Guard ("Defendant Guard") was established by Art. III, §46 of the Missouri Constitution and Mo. Rev. Stat. §41.010, and now exists as a division of the Missouri Department of Public Safety. Defendant Guard is sued herein to the fullest extent authorized by law.

6. At all relevant times, Defendant Stephen L. Danner was a natural person who was a citizen and resident of the state of Missouri, and who acted as Adjutant General of Defendant Guard, its top-ranking officer with the rank of Major General. He is sued herein in his individual and official capacities to the fullest extent authorized by law.

7. At all relevant times, Defendant Gregory S. Champagne was a natural person who was a citizen and resident of the state of Missouri, and who acted as Assistant Adjutant General in command of the Missouri Air National Guard with the rank of Brigadier General. He is sued herein in his individual and official capacities to the fullest extent authorized by law.

8. At all relevant times, Defendant Timothy M. Jones was a natural person who was a citizen and resident of the state of Missouri, and who acted as Director of Staff of the Missouri Air National Guard with the rank of Colonel. He is sued herein in his individual and official capacities to the fullest extent authorized by law.

9. At all relevant times, Defendant Rodney K. Ginter was a natural person who was a citizen and resident of the state of Missouri, and who acted as Director of Human Resources of the

Missouri Air National Guard with the rank of Lieutenant Colonel. He is sued herein in his individual and official capacities to the fullest extent authorized by law.

10. At all relevant times, Defendant Stephanie L. Boykin was a natural person who was a citizen and resident of the state of Missouri, and who acted as Equal Opportunity Officer, and later as Military Personnel Management Officer, of the Missouri Air National Guard with the rank of Lieutenant Colonel. She is sued herein in her individual and official capacities to the fullest extent authorized by law.

11. At all relevant times, Defendant Teri L. Baty was a natural person who was a citizen and resident of the state of Missouri, and who acted as the non-commissioned officer in charge of Plaintiff's unit at Defendant Guard's headquarters with the rank of Chief Master Sergeant. She is sued herein in her individual and official capacities to the fullest extent authorized by law.

<u>FACTS COMMON TO ALL COUNTS</u>

12. In 1989, Plaintiff enlisted in the Missouri Air National Guard.

13. Since 1998, Plaintiff has been a member of the Active Guard Reserve ("AGR") in full-time support of the Missouri Air National Guard.

14. AGR members must first serve a period of probationary status for no more than six years prior to being considered as career-status AGR members.

15. Once an AGR member is continued in service in the AGR beyond an initial probationary period, the member is considered to

- 3 -

be in career status.

16. Career-status AGR members are entitled to retirement, insurance, and other benefits afforded regular, active-duty members of the U.S. Air Force, although AGR members serve in, and remain under the authority of, Defendant Guard.

17. Career-status AGR members who have served for at least 18, but less than 20, years may not be discharged, denied reenlistment, or transferred from the AGR without the member's consent.

18. As of September, 2015, Plaintiff was a career-status AGR member with 17.5 years of service.

19. During each year of service as an AGR member, the member's performance is evaluated by the commissioned officer in charge of the AGR member's unit.

20. For senior enlisted AGR members like Plaintiff, someone superior in rank to the member prepares, in writing, what is known as an Enlisted Performance Report ("EPR") of the member's evaluation.

21. The report describes the AGR member's job description, primary duties, standards of conduct and related matters, physical fitness, resource management and decisiveness, training/education, leadership and related matters, and makes other comments the reporter identifies that are not categorized.

22. For each such category, the evaluator rates the AGR member by the following standards of performance expectations: Does Not Meet, Meets, Above Average, and Clearly Exceeds.

23. For each year from May 8, 2009 to May 7, 2013, the superior who evaluated Plaintiff was a non-party commissioned

- 4 -

officer.

24. For each of those years the officer evaluated Plaintiff, he reported that Plaintiff did no less than meet her expectations in each such category, and often was above average.

25. For each year from May 8, 2013 to January 28, 2015, the superior who evaluated Plaintiff was Defendant Baty.

26. On January 28, Defendant Baty signed Plaintiff's EPR for the period of May 8, 2013 to May 7, 2014.

27. Defendant Jones signed the EPR six days later on February 4.

28. EPRs are to be processed, completed, and placed in the service member's personnel file not later than a maximum period of 60 days from the last date identified as the covered period; i.e., May 7, 2014.

29. Sixty days from May 7 was July 6.

30. Among other favorable comments Defendant Baty made on that EPR, Baty said, "Has beneficial work habits helpful to both the officer and state tuition programs[.]"

31. For each of those years Defendant Baty evaluated Plaintiff, she reported that Plaintiff did no less than meet her expectations in each such category, and often was above average.

32. On February 9, 2015, Defendant Baty presented Plaintiff with the favorable EPR Baty signed on January 28, which EPR Plaintiff acknowledged and signed on February 9.

33. On February 10, 2015 -- a date which was only one day after Defendant Baty presented the favorable January 28 EPR to Plaintiff -- Plaintiff received a written memorandum from

Defendant Boykin which purported to reprimand her regarding her processing of the promotions of certain commissioned officers, as well as regarding allegedly unacceptable work habits.

34. Reprimands and other forms of discipline serve the primary function of rehabilitation whereby service members may first receive counseling, and then progress to more severe forms of discipline such as reprimands and demotions, among other things, if the member's conduct continues to fail to conform to acceptable military standards.

35. It is only in the very narrow range of chronically unacceptable conduct or certain criminal conduct that discipline would serve as a basis for a member's separation or discharge.

36. Defendant Boykin's letter of February 10, 2015, said that the information forming the basis for the so-called letter of reprimand was given to her by Defendant Baty regarding events occurring on or about December 19, 2014, January 9, 2015, and January 30, 2015.

37. By February 9, 2015 –- the day Defendant Baty presented Plaintiff with the favorable EPR spanning May, 2013 to May, 2014 –- Baty had already reported to Defendant Boykin the alleged events forming the basis for the purported reprimand, yet she still presented Plaintiff with the favorable EPR of January 28 without mentioning anything about the purported events of December 19, 2014, January 9, 2015, and January 30, 2015.

38. Among other things, Defendant Boykin's letter alleged that Plaintiff committed "dereliction of duty."

39. In military settings, "dereliction of duty" is considered a

crime punishable by court martial per 10 U.S.C. §892 with loss of pay, or incarceration from three months to two years, or a bad-conduct or dishonorable discharge, or any combination thereof.

40. Service members accused of dereliction of duty are entitled to be informed of their right to remain silent pursuant to the Fifth Amendment to the U.S. Constitution and 10 U.S.C. §831, and are entitled to legal counsel pursuant to the Sixth Amendment to the U.S. Consitution and 10 U.S.C. §827.

41. Neither Defendant Boykin nor anyone else complied with the Fifth and Sixth Amendments or §§827 or 831.

42. Defendant Jones ordered Defendant Boykin to issue the letter, although Defendant Boykin would not have issued the letter without Defendant Jones' order.

43. Plaintiff immediately rebutted Defendant Boykin's letter of reprimand, and she did so in writing to Defendant Boykin on February 13.

44. Plaintiff's rebuttal denied the allegations with specific references to her performance and work habits which reflected the last EPR issued by Defendant Baty on January 28 as being "helpful to both the officer and state tuition programs."

45. No one responded to Plaintiff's rebuttal of the letter of reprimand, although Defendant Boykin was required by certain Air Force regulations to do so no later than 45 days after receiving Plaintiff's rebuttal.

46. The reprimand was placed in Plaintiff's personnel file on location and off location, and was disseminated to the other

defendants and other persons who are not parties hereto.

47. On March 9, 2015, Defendant Gintner issued a written memorandum to Plaintiff which said that she would be released from the AGR and separated from the military, but without saying anything about good cause therefor.

48. Non-probationary members of the AGR who are to be released and separated must be given 180 days' notice in advance, and good cause therefor must be specified in detail so as to inform the bases for member's discharge.

49. Such non-probationary members of the AGR are also entitled to the assistance of legal counsel, but Plaintiff was denied legal counsel.

50. Defendant Gintner's letter of March 9 said that Plaintiff's release would be effective 180 days later, on September 5, 2015.

51. Defendant Gintner's memorandum told Plaintiff that she had 30 days to submit a request for reconsideration to Defendant Danner.

52. On March 31, Plaintiff served on Defendant Danner her request for reconsideration.

53. On April 30, Defendant Danner denied Plaintiff's request for reconsideration.

54. On May 11, Plaintiff received another written memorandum from Defendant Gintner dated May 6 purporting to serve as another 180-day discharge notice stating that, effective September 5, she would be involuntarily released from the AGR for unspecified "moral and unprofessional conduct."

55. One hundred eighty days from May 6, 2015, was November 2,

- 8 -

2015.

56. Thereafter, Plaintiff received yet another written memorandum from Defendant Gintner dated May 12 purporting to serve as a 180-day discharge notice stating that, effective September 5, she would be involuntarily released from the AGR for unspecified "moral and unprofessional conduct," and that the memorandum superseded even yet another such memorandum issued the day before, on May 11.

57. One hundred eighty days from May 12, 2015, was November 8, 2015.

58. Thereafter, Plaintiff received a fourth (not counting the May 11 notice) written memorandum from Defendant Gintner dated June 9 purporting to serve as a 180-day discharge notice stating that, effective September 5, she would be involuntarily released from the AGR, but this time again without explaining why, and that the memorandum superseded the memorandum he had issued on May 12.

59. One hundred eighty days from June 9, 2015, was December 6, 2015.

60. No one has ever given Plaintiff a copy of the May 11 memorandum.

61. On September 5, 2015, Defendant Champagne ordered Plaintiff to be released from the AGR and separated from military service.

62. On December 6, 2015, Defendant Baty made and signed Plaintiff's EPR for the period of May 8, 2014 to May 7, 2015 — the very period which encompassed the events Defendant Baty

reported to Defendant Boykin for the purpose of Defendant Boykin issuing Plaintiff the so-called reprimand which accused her of committing the crime of dereliction of duty.

63. By December 6, 2015, Plaintiff was out of the military service she had been in since 1989.

64. In that December 6 EPR, Defendant Baty did not mention anything about what she had told Defendant Boykin in furtherance of the so-called reprimand -- by which Plaintiff was accused of the crime of dereliction of duty -- but instead reported that Plaintiff met all expectations Defendant Baty (and the Air Force) had of her.

65. Sixty days from May 7, 2015 was July 6, the deadline for processing, completing, and placement in the service member's personnel file.

66. On July 6, 2015, Plaintiff was still a member of the AGR who was still being set up by the defendants for non-continuation in the AGR and separation/discharge because of the so-called reprimand which accused her of the crime of dereliction of duty and was accompanied by violations of her constitutional and statutory rights to remain silent and assistance of legal counsel.

67. Plaintiff in fact was separated and discharged on September 5, 2015, as ordered by Defendant Champagne, and she thereafter received $98,500.00, more or less, in separation pay, but only after a significant delay due to interference by Defendant Baty during which Plaintiff had to rely on unemployment benefits for her subsistence.

68. Although Defendant Baty had made and signed Plaintiff's latest (by then) EPR on December 6, 2015, she had never discussed it or otherwise made it known to Plaintiff, and so she violated certain Air Force regulations requiring that she either meet with Plaintiff in person about it or discuss it with her by telephone or electronically.

69. At or about the time Defendant Baty made and signed Plaintiff's latest (by then) EPR on December 6, 2015, she retired from service.

70. Defendant Jones did not sign that EPR until April 16, 2016, yet he had retired 11 months earlier in May, 2015.

71. On August 31, 2016, Plaintiff brought suit in this Court, which case was assigned No. 16AC-CC00367.

72. As of August 31, 2016, Plaintiff was unaware of the latest (by then) EPR Defendant Baty had made and signed on the prior December 6, which Defendant Jones signed on the prior April 16.

73. Had Plaintiff been timely made aware of the latest (by then) EPR Defendant Baty had made and signed on the prior December 6 –- or even had she been made aware of it on that day, December 6, or anytime before Defendants Jones and Baty retired -- she would have filed a complaint against them with the Inspector General's office and exposed the matter to the light of day so as to then conclusively establish the rights to relief she seeks by the instant cause of action and would have saved her career from the fate it ultimately met.

74. Shortly after Plaintiff brought suit and served Defendant Danner, Defendant Danner performed an about-face regarding his

- 11 -

prior assessment of Plaintiff and determined to reconsider her release and separation because of his newly-formed opinion that she had an unmatched work expertise and other favorable qualities, so he offered to restore her to the position she held so that she could move forward with the remainder of her career-status AGR membership and receive the active-duty retirement benefits of an AGR member upon retirement.

75. Plaintiff accepted that offer, then dismissed the then-pending suit without prejudice and returned to service as what she thought was a career-status AGR member, like what Defendant Danner represented.

76. Plaintiff accepted that offer knowing that she would have to repay the said separation pay of approximately $98,000.00, as well as the taxes she paid when she received it, but the value of continuing in the AGR and receipt of earned retirement benefits thereafter outweighed the prospect of repaying the separation pay and its associated taxes.

77. Although Plaintiff was allowed to return to service, her military records still had the taint of the prior dismissal, and instead of characterizing her return as a continuation of her 17.5-years AGR career as contemplated by Defendant Danner's offer, it instead was characterized as an initial tour of duty such that she was considered to be a probationary-status AGR member and not a career-status AGR member who would otherwise be on track to receive the active-duty retirement benefits of an AGR member upon retirement.

78. Plaintiff reached out to the defendants, including

Defendant Danner, for help in correcting her military records to show her as a career-status AGR member soon entitled to active-duty retirement benefits, but they, including Defendant Danner, have insisted that she figure it all out for herself.

79. By law, Defendant Danner had the lone authority to designate Plaintiff's return to service as a continuation in the AGR, and to ensure her military records were corrected accordingly, yet he failed and refused to do so, despite his promise to her that he would do so.

80. But for Defendant Danner's said promise, Plaintiff would not have dismissed the lawsuit she had filed and would have moved forward with it then.

81. As a direct and proximate result of the circumstances surrounding and leading to Plaintiff's discipline, discharge, and mischaracterized return to service, Plaintiff has been damaged.

———————————— END OF FACTS ————————————

## COUNT I - BREACH of CONTRACT

82. Pursuant to Mo. S. Ct. R. 55.12, Plaintiff incorporates herein the foregoing facts common to all counts.

83. Plaintiff and Defendant Guard had a valid and enforceable contract in force at all relevant times.

84. Plaintiff performed the terms of the contract by fully dis-charging her duties as an employee of Defendant Guard.

85. Defendant Guard breached the contract by the actions of the individual defendants, its employees, to wit:

86. Defendant Danner:

- 13 -

a. Failed to ensure that his subordinates followed the requisite procedures for disciplining and discharging Plaintiff, a non-probationary AGR member;

b. Condoned his subordinates' failure to follow the requisite procedures for disciplining and discharging Plaintiff;

c. Allowed Plaintiff to be disciplined and discharged under such circumstances that he knew such action would breach the contract;

d. Caused or contributed to cause Plaintiff to incur a liability to repay separation pay and associated taxes she otherwise would not have incurred, as well as other damages; and

e. Failed and refused to honor and follow up with his offer to restore Plaintiff to career-status AGR membership.

87. Defendant Champagne:

a. Failed to ensure that his subordinates followed the requisite procedures for disciplining and discharging Plaintiff, a non-probationary AGR member;

b. Condoned his subordinates' failure to follow the requisite procedures for disciplining and discharging Plaintiff;

c. Ordered Plaintiff to be disciplined and discharged under such circumstances that he knew such action would breach the contract; and

d. Caused or contributed to cause Plaintiff to incur a liability to repay separation pay and associated taxes she otherwise would not have incurred, as well as other damages.

88. Defendant Jones:

a. Failed to ensure that his subordinates followed the req-

- 14 -

uisite procedures for disciplining and discharging Plaintiff;

b. Condoned his subordinates' failure to follow the requisite procedures for disciplining and discharging Plaintiff;

c. Ordered Defendant Boykin to issue a letter of reprimand to Plaintiff knowing that Plaintiff's EPRs issued to Plaintiff contradicted any indication that reprimand was warranted, and that he did so for the purpose of ensuring Plaintiff be disciplined and discharged in breach of the contract; and

d. Caused or contributed to cause Plaintiff to incur a liability to repay separation pay and associated taxes she otherwise would not have incurred, as well as other damages.

89. Defendant Gintner:

a. Failed to ensure that his subordinates followed the requisite procedures for disciplining and discharging Plaintiff;

b. Condoned his subordinates' failure to follow the requisite procedures for disciplining and discharging Plaintiff;

c. Issued memoranda purporting to comply with the requisite procedures for discharging Plaintiff where he knew or should have known that he did not comply;

d. Ensured that Plaintiff was discharged under such circumstances that he knew such action would breach the contract; and

e. Caused or contributed to cause Plaintiff to incur a liability to repay separation pay and associated taxes she otherwise would not have incurred, as well as other damages.

90. Defendant Boykin:

a. Issued a letter of reprimand to Plaintiff knowing that

- 15 -

such action conflicted with the EPRs issued to Plaintiff and that there was no good cause therefor, and that she did so despite the fact that she would not have done so but for Defendant Jones' ordering her to do so;

b. Ensured that Plaintiff was discipline and discharged under such circumstances that she knew such action would breach the contract; and

c. Caused or contributed to cause Plaintiff to incur a liability to repay separation pay and associated taxes she otherwise would not have incurred, as well as other damages.

91. Defendant Baty:

a. Failed to ensure that the requisite procedures were followed for disciplining Plaintiff;

b. Condoned and assisted the other defendants' failure to follow the requisite procedures for disciplining and discharging Plaintiff;

c. Prodded Defendant Jones or Defendant Boykin to issue Plaintiff a letter of reprimand knowing that such action conflicted with the EPRs she issued to Plaintiff and that there in fact was no good cause therefor;

d. Ensured that Plaintiff was disciplined and discharged under such circumstances that she knew such action would breach the contract; and

e. Caused or contributed to cause Plaintiff to incur a liability to repay separation pay and associated taxes she otherwise would not have incurred, as well as other damages.

92. As a direct and proximate result of the foregoing breach,

Plaintiff has been damaged.

93. Based on the foregoing, Plaintiff is entitled to damages.

**WHEREFORE,** Plaintiff prays for the following relief:

A. Damages;

B. An order requiring Defendants to pay all costs of this action; and

C. For such other relief which is necessary, proper, and allowable under the law.

### COUNT II – TORTIOUS INTERFERENCE with a CONTRACT

94. Pursuant to Rule 55.12, Plaintiff incorporates herein the foregoing facts common to all counts.

95. Plaintiff and Defendant Guard had a valid contract in force at all relevant times.

96. Each of the individual defendants was aware of the contract.

97. Plaintiff performed the obligations imposed on her by the terms of the contract by fully discharging her duties while working as an employee of Defendant Guard.

98. Each of the individual defendants induced or caused a breach of the contract, to wit:

99. Defendant Danner:

a. Allowed his subordinates to not follow the requisite procedures for disciplining and discharging Plaintiff where he knew or should have known that they did not follow them;

b. Refused to ascertain, prior to affirming discharge, the true circumstances leading thereto that Plaintiff's performance since May 2013 instead met all relevant expectations such that she would not have been disciplined and discharged;

- 17 -

c. Knew or should have known the true circumstances leading to Plaintiff's discipline and discharge, yet affirmed the discharge anyway;

d. Allowed Plaintiff to be discharged under such circumstances that he knew such action would breach the contract;

e. Caused or contributed to cause Plaintiff to incur a liability to repay separation pay and associated taxes she otherwise would not have incurred, as well as other damages; and

f. Refused to honor and follow up with his accepted offer to restore Plaintiff to career-status AGR membership, knowing that there never had been cause for disciplining or discharging her in the first instance.

100. Defendant Champagne:

a. Allowed his subordinates to not follow the requisite procedures for disciplining and discharging Plaintiff where he knew or should have known that they did not follow them;

b. Refused to ascertain, prior to ordering Plaintiff's discharge, the true circumstances leading thereto that Plaintiff's performance since May 2013 instead met all relevant expectations such that she would not have been disciplined and discharged;

c. Knew or should have known the true circumstances leading to Plaintiff's discipline and discharge, yet ordered the discharge anyway;

d. Ordered Plaintiff to be discharged under such circumstances that he knew such action would breach the contract; and

e. Caused or contributed to cause Plaintiff to incur a

- 18 -

liability to repay separation pay and associated taxes she otherwise would not have incurred, as well as other damages.

101. Defendant Jones:

a. Refused to follow the requisite procedures for disciplining or discharging Plaintiff, although he knew or should have known of those procedures;

b. Allowed his subordinates to not follow the requisite procedures for disciplining Plaintiff, where he knew or should have known that his subordinates were aware of those procedures;

c. Prior to Plaintiff's discharge, knowingly or negligently failed to determine the true circumstances leading thereto that Plaintiff's performance since May 2013 instead met all relevant expectations such that she would not have been disciplined and discharged;

d. Prior to Plaintiff's discharge, knowingly kept secret from Plaintiff and others except Defendant Baty, the true circumstances leading to Plaintiff's discharge that Plaintiff's performance since May 2013 instead met all relevant expectations and could not, and would not, have supported the actions he took which directly led to her discharge;

e. After Plaintiff's discharge, knowingly kept secret from Plaintiff said true circumstances in order to avoid the discovery thereof so as to protect his own interests at Plaintiff's expense;

f. Refused to ensure that his subordinates followed the requisite procedures for disciplining Plaintiff;

g. Condoned his subordinates' failure to follow the requisite procedure for disciplining Plaintiff;

- 19 -

h. Ordered Defendant Boykin to issue a letter of reprimand to Plaintiff knowing that Plaintiff's EPRs issued to Plaintiff contradicted any indication that discipline was warranted, and that he did so for the purpose of ensuring Plaintiff be discharged in breach of the contract; and

i. Caused or contributed to cause Plaintiff to incur a liability to repay separation pay and associated taxes she otherwise would not have incurred, as well as other damages.

102. Defendant Gintner:

a. Refused to follow the requisite procedures for disciplining or discharging Plaintiff, although he knew or should have known of those procedures;

b. Allowed his subordinates to not follow the requisite procedures for disciplining Plaintiff, where he knew or should have known that his subordinates were aware of those procedures;

c. Issued memoranda purporting to comply with the requisite procedures for discharging Plaintiff where he knew or should have known that he did not comply; and

d. Ensured that Plaintiff was disciplined and ultimately discharged under such circumstances that he knew such action would breach the contract; and

e. Caused or contributed to cause Plaintiff to incur a liability to repay separation pay and associated taxes she otherwise would not have incurred, as well as other damages.

103. Defendant Boykin:

a. Refused to follow the requisite procedures for disciplining or discharging Plaintiff, although she knew or should

have known of those procedures;

b. Allowed her subordinates to not follow the requisite procedures for disciplining Plaintiff, where she knew or should have known that her subordinates were aware of those procedures;

c. Issued a letter of reprimand to Plaintiff knowing that such action conflicted with the EPRs issued to Plaintiff and that there was no good cause therefor such that she would not have done so but for Defendant Jones' order to do so; and

d. Ensured that Plaintiff was disciplined and discharged under such circumstances that she knew such action would breach the contract; and

e. Caused or contributed to cause Plaintiff to incur a liability to repay separation pay and associated taxes she otherwise would not have incurred, as well as other damages.

104. Defendant Baty:

a. Refused to follow the requisite procedures for disciplining or discharging Plaintiff, although she knew or should have known of those procedures;

b. Allowed her subordinates to not follow the requisite procedures for disciplining Plaintiff, where she knew or should have known that his subordinates were aware of those procedures;

c. Prodded Defendant Jones or Defendant Boykin to issue Plaintiff a letter of reprimand knowing that such action conflicted with the EPRs she issued to Plaintiff and that there in fact was no good cause therefor;

d. Ensured that Plaintiff was discharged under such circumstances that she knew such action would breach the contract;

and;

      e. Caused or contributed to cause Plaintiff to incur a liability to repay separation pay and associated taxes she otherwise would not have incurred, as well as other damages.

105. The said conduct of the individual defendants was not justified.

106. As a direct and proximate result of the foregoing, Plaintiff has been damaged.

    **WHEREFORE**, Plaintiff prays for the following relief:

A. Damages;

B. An order requiring Defendants to pay all costs of this action; and

C. For such other relief which is necessary, proper, and allowable under the law.

### COUNT III - INFLICTION of EMOTIONAL DISTRESS

107. Pursuant to Rule 55.12, Plaintiff incorporates herein the foregoing facts common to all counts.

108. Each of the individual defendants ensured that Plaintiff was disciplined and discharged without complying with the requisite procedures and without having any good cause therefor, while also accusing her of committing the crime of dereliction of duty and denying her the protection of her related constitutional and statutory rights, to wit:

109. Defendant Danner:

      a. Allowed his subordinates to not follow the requisite procedures for disciplining and discharging Plaintiff where he knew or should have known that they did not follow them;

- 22 -

b. Refused to ascertain, prior to affirming discharge, the true circumstances leading thereto that Plaintiff's performance since May 2013 instead met all relevant expectations such that she would not have been disciplined and discharged;

c. Knew or should have known the true circumstances leading to Plaintiff's discipline and discharge, yet affirmed the discharge anyway;

d. Caused or contributed to cause Plaintiff to incur a liability to repay separation pay and associated taxes she otherwise would not have incurred, as well as other damages; and

e. Refused to honor and follow up with his accepted offer to restore Plaintiff to career-status AGR membership, knowing that there never had been cause for disciplining or discharging her in the first instance.

110. Defendant Champagne:

a. Allowed his subordinates to not follow the requisite procedures for disciplining and discharging Plaintiff where he knew or should have known that they did not follow them;

b. Refused to ascertain, prior to ordering Plaintiff's discharge, the true circumstances leading thereto that Plaintiff's performance since May 2013 instead met all relevant expectations such that she would not have been disciplined and discharged;

c. Knew or should have known the true circumstances leading to Plaintiff's discipline and discharge, yet ordered the discharge anyway; and

d. Caused or contributed to cause Plaintiff to incur a liability to repay separation pay and associated taxes she

- 23 -

otherwise would not have incurred, as well as other damages.

111. Defendant Jones:

a. Refused to follow the requisite procedures for disciplining or discharging Plaintiff, although he knew or should have known of those procedures;

b. Allowed his subordinates to not follow the requisite procedures for disciplining Plaintiff, where he knew or should have known that his subordinates were aware of those procedures;

c. Prior to Plaintiff's discharge, knowingly or negligently failed to determine the true circumstances leading thereto that Plaintiff's performance since May 2013 instead met all relevant expectations such that she would not have been disciplined and discharged;

d. Prior to Plaintiff's discharge, knowingly kept secret from Plaintiff and others except Defendant Baty, the true circumstances leading to Plaintiff's discharge that Plaintiff's performance since May 2013 instead met all relevant expectations and could not, and would not, have supported the actions he took which directly led to her discharge;

e. After Plaintiff's discharge, knowingly kept secret from Plaintiff said true circumstances in order to avoid the discovery thereof so as to protect his own interests at Plaintiff's expense;

f. Refused to ensure that his subordinates followed the requisite procedures for disciplining Plaintiff;

g. Condoned his subordinates' failure to follow the requisite procedure for disciplining Plaintiff;

h. Ordered Defendant Boykin to issue a letter of reprimand

- 24 -

to Plaintiff knowing that Plaintiff's EPRs issued to Plaintiff contradicted any indication that discipline was warranted; and

    i. Caused or contributed to cause Plaintiff to incur a liability to repay separation pay and associated taxes she otherwise would not have incurred, as well as other damages.

112. Defendant Gintner:

    a. Refused to follow the requisite procedures for disciplining or discharging Plaintiff, although he knew or should have known of those procedures;

    b. Allowed his subordinates to not follow the requisite procedures for disciplining Plaintiff, where he knew or should have known that her subordinates were aware of those procedures;

    c. Issued memoranda purporting to comply with the requisite procedures for discharging Plaintiff where he knew or should have known that he did not comply;

    d. Ensured that Plaintiff was disciplined and ultimately discharged; and

    e. Caused or contributed to cause Plaintiff to incur a liability to repay separation pay and associated taxes she otherwise would not have incurred, as well as other damages.

113. Defendant Boykin:

    a. Refused to follow the requisite procedures for disciplining, although she knew or should have known of those procedures;

    b. Allowed her subordinates to not follow the requisite procedures for disciplining Plaintiff, where she knew or should have known that her subordinates were aware of those procedures;

- 25 -

c. Issued a letter of reprimand to Plaintiff knowing that such action conflicted with the EPRs issued to Plaintiff and that there was no good cause therefor such that she would not have done so but for Defendant Jones' order to do so;

d. Accused Plaintiff of committing the crime of dereliction of duty knowing that there was no cause therefor, and refusing to ensure protection of Plaintiff's related constitutional and statutory rights; and

e. Caused or contributed to cause Plaintiff to incur a liability to repay separation pay and associated taxes she otherwise would not have incurred, as well as other damages.

114. Defendant Baty:

a. Refused to follow the requisite procedures for disciplining or discharging Plaintiff, although she knew or should have known of those procedures;

b. Allowed her subordinates to not follow the requisite procedures for disciplining Plaintiff, where she knew or should have known that her subordinates were aware of those procedures;

c. Prodded Defendant Jones or Defendant Boykin to issue Plaintiff a letter of reprimand knowing that such action conflicted with the EPRs she issued to Plaintiff and that there in fact was no good cause therefor; and

d. Prior to Plaintiff's discharge, knowingly kept secret from Plaintiff and others except Defendant Jones, the true circumstances leading to Plaintiff's discharge that Plaintiff's performance since May 2013 instead met all relevant expectations and could not, and would not, have supported the actions she took

- 26 -

which directly led to her discharge;

      e. After Plaintiff's discharge, knowingly kept secret from Plaintiff said true circumstances in order to avoid the discovery thereof so as to protect her own interests at Plaintiff's expense; and

      f. Caused or contributed to cause Plaintiff to incur a liability to repay separation pay and associated taxes she otherwise would not have incurred, as well as other damages.

115. Said defendants knew or should have known that their conduct involved an unreasonable risk of causing Plaintiff emotional distress.

116. Said defendants' conduct in fact involved an unreasonable risk of causing Plaintiff emotional distress.

117. Said defendants knew or by using ordinary care could have, or should have, known of said risk.

118. As a direct and proximate result of such conduct, Plaintiff has been damaged by sustaining medically diagnosable and significant emotional distress.

**WHEREFORE**, Plaintiff prays for the following relief:

A. Damages;

B. An order requiring Defendants to pay all costs of this action; and

C. For such other relief which is necessary, proper, and allowable under the law.

## COUNT IV – FRAUD

119. Pursuant to Rule 55.12, Plaintiff incorporates herein the foregoing facts common to all counts.

120. Defendant Danner ensured that Plaintiff was discharged upon improper procedure and without good cause.

121. Plaintiff was entitled to continuation in the AGR because her performance as noted on her EPRs warranted continuation, and because Defendant Danner promised her that she could continue in career-status AGR membership after she dismissed the suit she brough in 2016.

122. Defendant Danner expressly represented to Plaintiff that she could continue in career-status AGR membership after she dismissed the suit she brought in 2016, and that he would assist her in that regard.

123. Defendant Danner intended for Plaintiff to act on those representations in a manner consistent with how he made the representations to her.

124. Defendant Danner's representations were material to Plaintiff's decision to drop her suit and resume her military career.

125. Plaintiff relied on Defendant Danner's offer and assurances that that she could continue in career-status AGR membership after she dismissed the suit she brought in 2016, and she had a right to rely on those representations.

126. Said defendant's representations were false, and he knew they were false or acted with reckless indifference to whether they were false.

127. As a direct and proximate result of such representations, Plaintiff has been damaged.

128. Defendant Danner's actions demonstrate that he made such

false statements with malice or with reckless indifference; accordingly, he should be ordered to pay Plaintiff punitive damages.

**WHEREFORE,** Plaintiff prays for the following relief:

A. Actual and punitive damages;

B. An order requiring Defendants to pay all costs of this action; and

C. For such other relief which is necessary, proper, and allowable under the law.

Respectfully submitted,

**HANRAHAN & NACY, P.C.**

by:  */s/ William P. Nacy*

WILLIAM P. NACY, Mo. 52576
522 E. Capitol Ave.
Jefferson City, MO  65101
Telephone (573) 636-7900
Telefacsimile (573) 556-6340
pete@midmolegal.com

Attorneys for Plaintiff

## CERTIFICATE of SERVICE

    **COMES NOW** the undersigned, and certifies that, on May 17, 2023, the undersigned signed the original hereof and that a copy of the foregoing was served upon all counsel of record via the Missouri eFiling system.


*/s/ William P. Nacy*
_____
WILLIAM P. NACY
